FEUTRALLE et al.
v.
UNITED STATES.
No. 14553.

United States Court of Appeals
Fifth Circuit.
Jan. 6, 1954.

160

Isaac S. Peebles, Jr., T. Reuben Burnside, Eugene M. Kerr, Augusta, Ga., for appellants.

J. Saxton Daniel, U. S. Atty., Savannah, Ga., Wm. T. Morton, Asst. U. S. Atty., Augusta, Ga., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

Along with seventeen other named co-conspirators, the appellants, Drawdy and Feutralle, were indicted for conspiracy to violate the Internal Revenue Laws with reference to the manufacture, sale, possession, transportation, etc., of whiskey. In addition, Drawdy was, with others named, charged in ten counts of the indictment with the commission of substantive offenses against the Internal Revenue Laws to which the alleged conspiracy related. The charges against other defendants were disposed of and

the case went to the jury only against Drawdy, Feutralle and one McKie. All were convicted. Drawdy received a general sentence of two years; Feutralle of one year, and McKie was placed upon probation. Drawdy and Feutralle prosecute this appeal, urging separate assignments of error.

Common to the specifications of error by each is the contention that the evidence is insufficient to support the verdict and the consequent error in the court's overruling of defendants' respective motions for judgments of acquittal. As to Drawdy's case, the record is full of evidence by Federal and State officers, alleged co-conspirators and others which points overwhelmingly to his participation in the conspiracy as charged and in the commission of substantive offenses upon which he was sentenced. This evidence was in no wise controverted. In Feutralle's case, the evidence against him was less strong, coming chiefly from one witness, an alleged co-conspirator, one Williford, whose credibility came under serious attack by a showing of his prior convictions of felonies, and that he was at the time of the trial a paid "stool pigeon" in the employ, in some manner, of the Alcohol Tax Unit. However, Williford's testimony, if credited, definitely and positively showed Feutralle was connected with, and participated in, some of the alleged illegal activities with Drawdy and others. Of course, the credibility of this witness was for determination by the jury and not proper for re-examination upon appeal. The jury's verdict finding Feutralle guilty evidences an acceptance of Williford's testimony. Therefore, as to neither appellant can it be said that the jury's verdict is without support in the evidence.

In adjudging the merits of the appellants' respective claims of procedural errors which are said to have induced the verdicts against them, we view the specifications in the light of the record as a whole. While as to both of these defendants we find in the rulings of the court aberrations from proper trial procedure, we do not find in them a basis for a determination of that prejudice which properly requires a reversal as to either of the defendants, for we do not think, considered either singularly or totally, they substantially affected the fair consideration of their guilt or innocence by the jury.[1]

Though relating to different witnesses, the chief thrust of the appellants is against the manner and method by which the court permitted the government's counsel to examine two witnesses from, and by means of, written statements which these witnesses had given to government officers following their arrest. It is also contended as to the witness called against Feutralle that the court's direction that he be held by the marshal intimidated the witness. Appellant Drawdy presents the contention that as to the witness against him the court should have, in any event, restricted the jury to consideration of the testimony to the purpose of impeachment of the witness, as urged upon the trial. As to Feutralle's exception, it appears that when the witness Kelly was called against him the court found the witness to be hostile and evasive and while he did direct the marshal to take custody of the witness, very shortly thereafter this order was countermanded and both the marshal and the judge told the witness he was free to go "on about his business." All of this happened during the time the jury was retired. Thereafter, upon motion of the government, the witness was recalled and the court permitted government's counsel to read separately each sentence of the written statement which this witness had signed and to ask him if it were true. The witness admitted the truth of each of the matters contained in the statement. The recitals of the statement and the questioning of the witness related to a trip made by the witness to South Georgia for a truck load of illicit whiskey and which was apprehended near Augusta

1. 28 U.S.C.A. § 2111.

**162**

and the witness arrested. The material point at issue was the identity of the person who had employed him to make the trip and who had gone to show the place where the whiskey was to be procured and loaded and who had convoyed the truck back to Augusta. The witness at all times denied knowing Feutralle or of seeing in court the man who had employed him, even though this defendant was present before him. While the statement and his specified testimony related to collateral and corroborative matters, the main point at issue was the identity of "Mr. Nubb." [2] Especially material and significant in determining Feutralle's claim of error is that in his original testimony, as he had in his statement, the witness maintained that he did not know the real name of "Mr. Nubb", did not know him, had never seen him before, nor since, and could not identify the man today and did not see him in the courtroom. Thus neither the statement nor the oral testimony identified this man as the defendant Feutralle. In the case of Drawdy the exception relates to occurrences during the testimony of Robert Rowe. The court also thought that when first called and questioned by the government this witness was hostile and evasive. In the absence of the jury, it stated that "these witnesses are all covering up." When the jury returned to the courtroom, the court permitted the entire written statement of Rowe, which definitely and completely implicated the defendant Drawdy in the transportation of liquor and the hauling of raw materials intended to be used in the production of distilled spirits, through the agency of the witness, to be read to the witness as a whole, whereupon counsel asked if the statement was true. The witness testified that the statement in its entirety was true. Counsel for Drawdy moved that the entire statement be stricken from the record as "highly prejudicial and it is improper examination of the witness" because "he [government counsel] is impeaching his own witness." The objection was overruled.

■ As to the witness Kelly against Feutralle, that this witness consistently maintained his inability to identify "Mr. Nubb" throughout the entire proceeding completely refutes, we think, appellants' claim that the action of the court intimidated the witness. While the temporary taking of the witness by the marshal was irregular, as promptly recognized by the trial court, and it is proper trial practice to delay until after trial any punitive proceedings against an offending witness, we cannot sustain here any claim of intimidation and error. Thus, as to both the witnesses Kelly against Feutralle and Rowe against Drawdy, there remains for consideration only the manner in which the court permitted the examination of these witnesses to be conducted and the failure of the court to instruct the jury that the only proper use of the testimony was for impeachment purposes.

■ Considerable discretion is allowed the trial court in the manner in which the examination of witnesses shall be conducted. That court, by its presence, can gauge the circumstances much better than they can be presented by a cold record. The court could well conclude that the witnesses had become hostile and sought to evade. The recitals of the prior statements afforded ample grounds for government counsel's pleas of surprise in each instance. Even then, however, counsel did not precisely seek to impeach the witness, but rather sought to use the statements as a means of refreshing the recollection of the witness and then, by leading questions, comprising as to Rowe the entire recital of the statement and as to Kelly by the separate contents of the statement, to secure the correction of the previously evasive, and in some respects conflicting, responses in the testimony of the witnesses upon the trial. When the testimony was completed, in each instance the truth of the matter was admitted to be as contained in the statements. Neither of the statements included any

2. The defendant Feutralle had lost a portion of his arm.

hearsay recitations. The recitals of each related only to matters which were admissible against the defendants upon the present trial. We do not have here, therefore, a case where the consistent and final denial by the witness of the recitals of the statement render such recitals mere hearsay, entirely inadmissible as substantive evidence, and proper for consideration only for impeachment purpose and which, even for this purpose should be admitted to no extent further than is necessary to undo the harm caused by unexpected testimony. Such improper use of written statements we have uniformly condemned.[3]

The authorities just cited well show the prejudice that can follow the admission of hearsay in the guise of impeaching testimony if the court does not carefully restrict the use of the contradictory statement, made so because denied by the trial testimony, to its only proper purpose of impeachment.

■■ In the present case, the trial testimony, when completed, avowed the truth of the statements and there is thus left for question only two matters: the conflicts then existing in the testimony of the witness which had been adduced upon the trial, and the manner in which the court permitted the examination to be conducted. As to the first of these, without attempting to lay down any general rule, we think under the circumstances here the sifting and determination of the truth, where conflict existed, was for the jury. But if we are mistaken in this, we are nevertheless convinced that the failure of the court, in the absence of request therefor, to segregate and direct the attention of the jury to the conflicts between the testimony first given and that subsequently elicited by the use of the statement and to instruct that it could be properly used only for the purpose of impeachment was not error which justifies reversal. As to the second, it is clear that the manner of examination of Rowe which the court permitted was irregular. It frequently leads to the prejudicial situations in the cases above referred to. However, in this case, each recital was relevant testimony, and we do not find the irregular manner in which the testimony was adduced to constitute reversible error under the facts of this case.

■ The jury, in its verdict finding Drawdy guilty on ten counts, included three in which he was not charged. This is said to evidence the failure of the jury to give any conscientious consideration to the case so that the entire verdict should be set aside. We do not agree. This appellant was charged in ten counts and the jury specified ten counts in its verdict of guilty. It is probable that the three counts erroneously included were meant to cover the other three counts in which Drawdy was charged, but to which the verdict does not refer. But however this might be, the error was corrected by the court at the time of the imposition of the general sentence of two years upon the correct seven counts. The sentence was within the maximum penalty which could have been assessed for either of the seven substantive offenses which were properly included in the jury's verdict. Since even inconsistency is not fatal to a verdict, we find no ground for reversal here.

■ The remaining assignments of error on behalf of Drawdy relate to claimed inaccuracies in the charge of the court as given, as well as its failure to charge. When the court, at the conclusion of its charge, offered opportunity for exceptions, defendant's counsel replied he wished to enter none. While in the case of serious and manifest errors this failure would not preclude our consideration of them, we find no such errors here as would justify our disregarding the general rule that only errors brought to the attention of the trial court, so that the court may have an opportunity

---

3. Culwell v. United States, 5 Cir., 194 F. 2d 808; Apodaca v. United States, 5 Cir., 200 F.2d 775; Young v. United States, 5 Cir., 97 F.2d 200, 117 A.L.R. 316.

for correction if necessary, will be considered on appeal.

Finding in the record no reversible error as against either of the appellants, the judgments of the trial court are

Affirmed.