**John R. McINTYRE, Plaintiff-Appellant,**

v.

**REYNOLDS METALS COMPANY,
Defendant-Appellee.**

**No. 72-2411
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1972.

John N. Barnhart, Houston, Tex., for plaintiff-appellant.

M. W. Meredith, Jr., Corpus Christi, Tex., for defendant-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant John McIntyre suffered a back injury while serving as a member

---

\* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

of the crew of the S. S. Inger, a vessel owned and operated by Reynolds Metals Company. Alleging negligence and unseaworthiness, McIntyre brought suit against Reynolds within the admiralty jurisdiction of the federal courts to recover damages for his injury. Reynolds denied any negligence or unseaworthiness and asserted contributory negligence as a defense. After a trial without a jury, the district court entered judgment for Reynolds, and McIntyre appeals. We reverse and remand for a new trial.

In May of 1969, while working aboard the S. S. Inger, McIntyre and other crew members were ordered to clean and paint some rusted surfaces in the forward pump room. Part of this job included removing metal gratings from the cat walk. The gratings were rusted to the angle irons on which they rested, and the men used sledge hammers to jar them free. In performing this work McIntyre was injured; the parties disagree on how the injury occurred.

McIntyre testified that after a fellow crew member, Jose Salinas, had freed one of the gratings by striking it an upward blow with a sledge hammer, McIntyre said "that's all right, Joe" and began to lift the grating. Salinas disregarded this remark and struck the grating again, causing McIntyre to fall backwards with the grating and to injure his back.

About seventeen months after the injury, counsel for Reynolds sought out Salinas aboard another ship as it lay in port to question him about McIntyre's accident. The ship's captain furnished

his cabin for the interview and offered counsel the use of his tape recorder to record what would be said. Without telling Salinas, counsel for Reynolds did record the ensuing interview. At this meeting Salinas did not support McIntyre's version of the facts. Salinas said he had been working near McIntyre at the time of the latter's injury, but not with him, and that he, Salinas, had not used a sledge hammer. Salinas also signed a written statement to this effect.

Later, defense counsel took Salinas' deposition, only to learn that he had changed his version of the facts to coincide with that of plaintiff McIntyre. When confronted with his signed statement from the interview, Salinas denied that it correctly reflected what he had said. At the deposition, counsel for Reynolds did not confront Salinas with the recorded oral interview statements by replaying the tape, but he asked generally whether Salinas had told the truth at the interview. In response to the questioning of the counsel for Reynolds and without specifying the contents of his oral interview statements, Salinas affirmed as a general proposition that what he had said at the interview was true.[1]

Salinas was unavailable to testify at trial,[2] and Reynolds wished to introduce the recorded interview into evidence. As a foundation Reynolds introduced only those parts of the Salinas deposition in which he identified himself, placed himself at the scene of the injury, and affirmed as a general proposition that he had told the truth at the

1. The pertinent dialogue, found at page 24 of the transcript of the Deposition of Jose P. Salinas, reads as follows:
Q [By counsel for Reynolds] But whatever you did tell me on August 13, 1970 [at the shipboard interview] was the truth; is that right?
A [By Salinas] It was the truth.
Q I am not asking you what is written down. I am asking you if what you told me August 13th—
A What you got written down, I didn't tell you like that.

Q That is not my question. I am not asking anything about what is written down. I am asking if what you told me on August 13, '70, aboard the WALTER RICE was the truth.
A That's correct. Just like I told her, the same statement I made.

2. Salinas was beyond the subpoena power of the District Court, Rule 45(e) Fed.R. Civ.P., and refused to appear voluntarily to testify at trial.

shipboard interview. Then, over appellant's hearsay objection, the tape-recorded interview was admitted into evidence.

It is clear from the district judge's memorandum opinion that he relied on the Salinas taped interview statements in finding that there was no negligence.

The single issue on appeal is whether these recorded statements were properly admitted into evidence. For the sake of clarity, we note that the recording was admitted as substantive evidence. It was not admitted as a prior inconsistent statement for impeachment purposes; no question is presented as to whether appellee Reynolds improperly impeached its own witness.[3] The problem is whether the tape-recorded interview should have been excluded as hearsay, or was sufficiently incorporated into Salinas' deposition testimony as to be a part of it and admissible at trial on the same basis at the deposition. It is clear that unless the recording is to be deemed part of the deposition, it is hearsay. It was a "statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." C. McCormick, Evidence § 246 (2d ed. 1972). Of course, the fact that the out-of-court statement was presented in court through a tape recording rather than through another witness' report does not affect its hearsay status. The statements were not made under oath and were not subject to cross-examination by opposing counsel, and the trier of fact had no opportunity to observe the declarant's de-

meanor. See C. McCormick, Evidence § 245 (2d ed. 1972).

Appellee urges that the recording was properly admitted because Salinas' affirmance under oath at the deposition that he had told the truth at the interview incorporated the interview statements by reference into the deposition. In United States v. Borelli, 2d Cir. 1964, 336 F.2d 376, 391, cert. denied sub nom. Cinquegrano v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 647 (1965), the court stated the rule by which a witness' prior statement may be deemed a part of his in-court testimony:

> When a witness thus affirms the truth of a prior statement, the earlier statement is to be considered "not only as bearing on the credibility of the witness but as affirmative evidence." Stewart v. Baltimore & Ohio R.R., 137 F.2d 527, 529 (2 Cir. 1943); the trier of the facts has "two conflicting statements * * * of equal force as evidence," Zimberg v. United States, 142 F.2d 132, 136 (1 Cir.), cert. denied, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573 (1944). See also Harman v. United States, 199 F.2d 34, 36 (4 Cir. 1952); Finnegan v. United States, 204 F.2d 105, 115 (8 Cir.), cert. denied, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953).[4]

This Court has suggested approval of the incorporation rule in *dictum* in Slade v. United States, 5th Cir. 1959, 267 F.2d 834, 838–839:

> This record demonstrates that we do not have here the situation of an ex parte statement, introduced as a prior inconsistent statement and then

---

3. It is true that in reminding Salinas at the deposition of his prior interview statements, counsel was adverting to prior inconsistent statements—a procedure that does seem to partake of impeachment. Whether or not the reference to the interview was intended at the deposition as impeachment by a prior inconsistent statement, however, the recorded interview was not inconsistent with the portions of the deposition introduced into evidence and was not offered or considered

as impeachment at trial. Even though the interview may have originally entered the deposition testimony as a tool of impeachment, the question on appeal is not whether it was proper impeachment, but whether it became proper substantive evidence.

4. In this case there were not two conflicting statements before the trier of facts only because the deposition testimony in conflict with the interview was not offered as evidence. *See* note 3, *supra*.

used in the examination of the recalcitrant or hostile witness, with the witness finally affirming the truthfulness and correctness of the statement, rather than the initial, oral Court testimony. When that takes place, the statement is effectually embraced by the witness, becomes a part of his oath-supported court-given testimony subject to cross examination, and is therefore not hearsay. * * * [S]ee McCormick, Evidence § 39 (1954).

Likewise, in Feutralle v. United States, 5th Cir. 1954, 209 F.2d 159, 162, this Court approved in an alternative holding the incorporation of a witness' prior statement into his sworn testimony by affirmation in court under oath it was true.

We do not agree with appellee, however, that the admissiblity of the recording in this case can be sustained on this incorporation theory. In all the above cited cases the witness was confronted with his prior statement in such a way that he and counsel for both sides were aware of its contents. In *Stewart*, for example, counsel confronted the witness with an affidavit which the witness and counsel could read at the time its correctness was affirmed in court. The witness not only asserted that he had told the truth at a certain place and time; he affirmed the specific contents of the prior statement in question. Being aware of the statement's contents,

opposing counsel had a meaningful opportunity to cross examine witness as to matters asserted in the statement.

The situation in the instant case was different. Salinas was not actually confronted at the deposition with his earlier statements. If counsel had played the recording or presented a transcription of it to the witness, he might have repudiated it, as he did the written interview statement containing substantially the same facts as the recording, or he might have acknowledged it as his own and admitted its truth. Since the prior statements were never presented to him at the deposition, however, it can hardly be said that the witness affirmed them as true under oath. Salinas' general assertion that he had told the truth at the interview amounted to little more than an argumentative claim that he was not a liar. It was not sufficient to incorporate the contents of the interview statements into the sworn deposition testimony. Moreover, since the recording was not played at the deposition, opposing counsel did not know the contents of the interview statements which Salinas claimed were true, and therefore had no meaningful opportunity to cross-examine him on them.

For the above reasons we hold that the unsworn tape-recorded interview should have been excluded as hearsay. The case must be reversed and remanded for a new trial.