BCCI HOLDINGS (Luxembourg), Societe
Anonyme, et al., Plaintiffs,

v.

Abdul Raouf Hasan KHALIL,
et al., Defendants.

No. Civ.A. 95–1252(JHG).

United States District Court,
District of Columbia.

Oct. 8, 1998.

Eric L. Lewis, Jeffrey D. Robinson, A. Katherine Toomey, Stacy A. Feuer of Baach Robinson & Lewis, Washington, D.C., for BCCI Holdings (Luxembourg), S.A., et al., plaintiff.

James P. Linn, Stephen Johnson of Linn & Neville, Oklahoma City, OK, and T. Jay Barrymore, Silver Spring, MD, for Abdul Raouf Hasan Khalil, defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This is one of five related civil lawsuits spawned by the international collapse of the Bank of Credit and Commerce International ("BCCI") [1] in 1991. In this action, the Court Appointed Fiduciaries of BCCI allege that defendant, Sheikh Abdul Raouf Hasan Khalil ("Khalil"), participated in a conspiracy by which the management of BCCI illegally and secretly sought to acquire ownership and maintain control of First American Corporation and First American Bankshares, Inc. (collectively "First American") through nominee shareholders and that BCCI Holdings also used nominee shareholders to disguise financial losses and illegal transactions. *See BCCI Holdings (Luxembourg), S.A. v. Khalil,* Civ. No. 95–1252 (Mem.Op. Jan. 15, 1997)

---

1. "BCCI", as used herein, refers collectively to the plaintiff entities, which are BCCI Holdings (Luxembourg) S.A. ("BCCI Holdings"), its two operating subsidiaries, Bank of Credit and Commerce International S.A. and Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Holdings) Limited, International Credit and Investment Company (Overseas) Limited, and Credit and Finance Company Limited.

(denying Khalil's motion to dismiss and discussing the allegations more fully).

According to the complaint, Khalil is a former senior member of the Kingdom of Saudi Arabia's government, having held the positions of Minister of Communications and Deputy Chief of Saudi Intelligence. Khalil also is the former Executive Administrator to Sheikh Kamala Ibrahim Adham, a businessman and former head of security for the Kingdom of Saudi Arabia. In 1979, Khalil became a record shareholder of BCCI Holdings. In 1982, Khalil became a record shareholder of Credit and Commerce American Holdings, N.V. ("CCAH"), a Netherlands Antilles corporation and the ultimate parent of First American.

With respect to the other four related cases, one was resolved on August 12, 1998, *see First American Corp. v. Al–Nahyan,* 17 F.Supp.2d 10, 19 (D.D.C.1998), and three others, including one brought by First American against Khalil, were almost entirely resolved on September 23, 1998, less than two weeks before trial was set to commence, and have been finally resolved today. Timely jury demands were made in each of those four cases.[2]

In this case, however, no jury demand was made when the complaint was filed in 1995, and it was not until after the Court had set this case down for a bench trial at a status conference in April 1998 that Khalil's counsel took the position that the absence of a jury demand on Khalil's part was unintentional. Khalil has filed a motion asking the Court to allow him a jury trial pursuant to Rule 39(b) of the Federal Rules of Civil Procedure. Upon consideration of the motion, the opposition, oral argument and the entire record herein, the motion will be denied.

### DISCUSSION

The Seventh Amendment to the Constitution provides in part that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right to a trial by jury shall be preserved...." U.S. CONST. amend. VII. The provision was added to the Bill of Rights largely in response to Antifederalist demands for citizen participation in federal civil trials to counterbalance Article III's broad grant of authority to the federal judiciary. *See* Paul D. Carrington, *The Seventh Amendment: Some Bicentennial Reflections,* 1990 U.Chi. Legal F. 33, 34–39 [hereafter Carrington, *Bicentennial Reflections* ]; *see also* Collen P. Murphy, *Integrating the Constitutional Authority of Civil and Criminal Juries,* 61 Geo. Wash.L.Rev. 723, 742–49 (1993). However, the conditions that led to the political compromise behind the Seventh Amendment in 1790 have changed considerably since that time. *See id.* at 41–42. Some of these changed conditions appear to have influenced Supreme Court constitutional interpretation and the procedural rules that pertain to the right to a jury in federal civil trials, both of which reflect tensions in the continued allegiance to civil juries.

For example, while most of the fundamental rights set forth in the Bill of Rights have been held to apply to the States through the Fourteenth Amendment's Due Process Clause, the Seventh Amendment right to a jury trial has not. *See Dice v. Akron, Canton & Youngstown R.R.,* 342 U.S. 359, 362–64, 72 S.Ct. 312, 96 L.Ed. 398 (1952); *Minneapolis & St. Louis R.R. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 60 L.Ed. 961 (1916). Moreover, unlike other constitutional rights that are presumed to be retained unless waived by affirmative act, Rules 38 and 39 adopted the default rule used in many states as of 1937 that the right to a jury trial would be waived unless preserved by affirmative act. *See generally* Fed .R.Civ.P. 38, 39 & advisory committee notes (1937).

---

**2.** At oral argument, Khalil's counsel, in an argument not made in their papers, asserted that a jury demand had been indorsed upon Khalil's answer in the separate case brought by First American. *See* Hearing Tr. at 14, 19, 26. However, the copy of Khalil's answer in that case filed with the Court does not contain a jury demand. *See First American,* Civ. No. 93–1309, Answer of Abdul Raouf Khalil to Plaintiffs' Complaint (filed Oct. 27, 1995). That action was scheduled for trial by jury on the basis of First American's jury demand in its complaint. By letter received today, *but see* D.D.C.R. 106(b) (correspondence with the Court not permitted), Khalil's counsel explained that in the process of having Khalil's answer in Civil Action No. 93–1309 retyped by local counsel, the jury demand was omitted.

Thus, under the default rules in place, all civil trials in federal courts will be by the Court unless at least one party affirmatively demands a jury trial within 10 days after the service of the last pleading directed to any issue triable of right by a jury. FED.R.CIV.P. 38(b). A party's failure to make such a demand is deemed a waiver of the Seventh Amendment right to a jury trial. FEDR. CIV.P. 38(d). And, once there has been a waiver by all parties:

> Issues not demanded for trial by jury as provided in Rule 38 *shall* be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

Fed.R.Civ.P. 39(b) (emphasis added).

Over time, courts have articulated various factors that should be taken into account in the exercise of discretion under Rule 39(b). These include the length of delay in making a jury demand, the reasons for the delay, prejudice to the non-moving party if a jury trial is granted, the complexity of the issues, and the effect on the Court's docket of granting a jury trial. *See generally* 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2334 at 185–206 (1994 & Supp.).

In addition, courts have sought to develop presumptions that give certain factors greater weight than others. Under the permissive view, the burden of persuasion is effectively on the non-moving party because a Rule 39(b) motion should be granted "in the absence of strong and compelling reasons to the contrary." *See, e.g., Lewis v. Thigpen,* 767 F.2d 252, 259 (5th Cir.1985). By contrast, under the restrictive view, the moving party must demonstrate special circumstances for a Rule 39(b) motion to be granted. *See, e.g., Lewis v. Time, Inc.,* 710 F.2d 549, 556–57 (9th Cir.1983); *Noonan v. Cunard S.S. Co.,* 375 F.2d 69, 70 (2d Cir.1967). There is no clear preference in this Circuit. Decisions more than 50 years old from this Circuit gravitate toward the restrictive view. *See Kass v. Baskin,* 164 F.2d 513, 517–18 (D.C.Cir.1947); *May v. Melvin,* 141 F.2d 22, 22 (D.C.Cir.1944). But, some of the more

recent decisions issued in this District adhere to the permissive view. *See, e.g., Kenilworth Trash Co. v. Eastern Waste Industries,* 139 F.R.D. 247, 249 (D.D.C.1991); *Hiotis v. Sherman Distributors of Maryland, Inc.,* 607 F.Supp. 217, 219 (D.D.C.1984).

In support of the restrictive view is the text of Rule 39(b), which directs that after a waiver the trial "shall" be by the Court unless a jury trial is granted, indicating that granting a 39(b) motion will be more the exception than the rule. In addition, the restrictive rule has additional textual support because the permissive view threatens to read Rule 38(d) out of the rules. However, in support of the permissive view is the historical importance of the civil jury and the judicial preference to limit waivers of constitutional rights elsewhere in the law. The Court finds these considerations to be in equipoise. Neither Rule 38 nor Rule 39 requires the gloss of a presumption either way to be administered "to secure the just, speedy, and inexpensive determination of every action." *See* FED.R.CIV.P. 1.

As the Supreme Court has indicated in a different context:

> The non-amenability of the problem to rule, because of the diffuseness of circumstances, novelty, vagueness, or similar reasons that argue for allowing experience to develop, appears to be a sound reason for conferring discretion on the magistrate.... A useful analogue is the course of development under Rule 39(b) of the Federal Rules of Civil Procedure, providing that in spite of a litigant's tardiness (under Rule 38 which specifies a ten-day-from-last-pleading deadline) the trial court "in its discretion" may order a trial by jury of any or all issues. Over the years, appellate courts have consistently upheld the trial judges in allowing or refusing late-demanded jury trials, but in doing so have laid down two guidelines for exercise of the discretionary power. The products of cumulative experience, these guidelines relate to the justifiability of the tardy litigant's delay and the absence of prejudice to his adversary. Time and experience have allowed the formless problem to take

shape, and the contours of a guiding principle to emerge.

*Pierce v. Underwood,* 487 U.S. 552, 562, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Court in *Pierce,* while identifying factors that guide decision, expressed a presumption-neutral view of Rule 39(b) discretion, a view this Court adopts. No predisposition toward granting or denying a Rule 39(b) motion is required, and each such motion should stand or fall on its own merits in light of the above-stated factors and in the context of the unique circumstances of a given case. *Accord* 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2334 at 189 (1994).

■ In this case, the factors most relevant to consider are the length of the delay in requesting a jury trial, the reasons for the delay, the prejudice that plaintiffs may suffer, the complexity of the issues, and the rights of other parties whose cases are on the Court's trial docket.

### 1. Length of Delay and Reasons Therefor

■ The complaint was filed on July 3, 1995, and the answer was filed on February 10, 1997. Neither pleading contained a jury demand and no timely separate demand was made. As a result, under Rules 38(d) and 39(b), the trial would be to the Court, and discovery proceeded on that basis. It was not until discovery had closed, after being once extended, and after the motions' deadline had passed that Khalil requested a trial by jury—nearly three years after the complaint, and fourteen months after the answer, were filed. Khalil asserts that the only reason that he had not timely demanded a jury trial was inadvertence of counsel, which reason the Court accepts. Counsel for Khalil became aware of the waiver only after this Court set a trial date in April 1998.

While inadvertence of counsel in making a timely jury demand may be excusable in certain circumstances, where the length of time to discover the error is as long as here, where discovery is complete and the motions' deadline has passed, and where the Court and the opposing party have come to rely on a bench trial, this factor weighs against granting a trial by jury.

### 2. Prejudice to Plaintiffs

Plaintiffs claim they would be significantly prejudiced if the Court were to grant Khalil's tardy request for a jury trial. According to them, a number of their decisions made during discovery were premised upon their understanding that this case was to be tried to the Court. For example, plaintiffs assert that with respect to certain witnesses outside the jurisdiction, they were satisfied in taking a number of depositions *de bene . esse* for a bench trial, whereas they would have arranged for live testimony for a jury trial. Even for those witnesses who would not be available to testify live, plaintiffs assert that they would have videotaped those depositions for presentation to a jury. Finally, plaintiffs assert that if they had been preparing for a jury trial when they took testimony in Pakistan, they would have pressed more aggressively for permission from the court in Pakistan to deviate from procedure there by having the official record reflect both questions and answers rather than simply a summary of the witness's testimony.

Khalil asserts that plaintiffs' claim of prejudice is a post-hoc concoction, and that throughout discovery both parties had labored under the understanding that they were preparing for a trial by jury. As with certain discovery disputes, this argument raises an uncomfortable issue of the credibility of counsel. The Court is not about to encourage satellite litigation by holding an evidentiary hearing to determine either whether Khalil's waiver of jury trial was inadvertent or strategic or whether plaintiffs' claim of prejudice could withstand cross examination. Of course, the Court is not obliged to accept conclusory and unsubstantiated assertions of prejudice. *See, e.g., Moody v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 915 F.2d 201, 207–08 (6th Cir.1990). But here, plaintiffs have made a plausible and specific enough showing of prejudice—more will not be required. This factor weighs against granting Khalil's motion.

### 3. Complexity of the Issues

Some clarification of how this factor is to be considered is required. The issue here is

not whether the case is so complex that no jury could render a responsible decision because it would be unable to comprehend the facts. At least one court has suggested that in such a case, the Fifth Amendment's Due Process guarantee of an informed, fair and impartial decisionmaker may limit the Seventh Amendment's preservation of trial by jury. *See In re Japanese Electronic Products Antitrust Lit.*, 631 F.2d 1069, 1079–86 (3d Cir.1980). *But see* Carrington, *Bicentennial Reflections*, 1990 U.Chi. Legal F. at 71–73 ("A cross-sectionally representative jury is therefore more likely to be overborne by the sheer length of today's trial, or by Madison Avenue techniques and expert hokum, than by the confounding complexity of the issues to be resolved."). In this case, the parties agree that the factual issues fall comfortably within the range of issues that a jury would be competent to comprehend.

Rather, the issue is whether in the Rule 39(b) context, the complexity of the issues provides a basis for favoring a bench as opposed to a jury trial. The point is not to compare the relative intellectual abilities of the Court and a hypothetical jury, but to determine whether the presentation of complex issues may be done more efficiently to the Court than to a jury. In some complex cases, it may turn out that this factor favors a jury trial because the parties are more likely to streamline their presentations to resonate with the common sense of jurors rather than to overcomplicate the case in their presentations to a single judge. In other complex cases, real efficiencies can be had in trying the case to the Court rather than a jury because of the greater procedural flexibility available in a bench trial. Each party has found, not surprisingly, at least one complex antitrust case in which the court has weighed the complexity either for or against granting a jury trial. *Compare Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 621 (9th Cir.1979) *with Davis–Watkins Co. v. Service Merchandise Co.*, 500 F.Supp. 1244, 1251–52 (M.D.Tenn.1980), *aff'd*, 686 F.2d 1190 (6th Cir.1982).

In this case, the complaint contains fairly complex allegations that will require some expert testimony on the banking industry and some involved fact testimony regarding certain alleged financial transactions. Plaintiffs announce that a sizable portion of their testimonial evidence will be presented by deposition transcripts rather than by live testimony. In that regard, a bench trial will be considerably more efficient because the Court can absorb the information at the speed of light (by reading the testimony) rather than at the slower speed of sound (by listening to the transcripts being read into the record). While a jury could no doubt comprehend the evidence to be adduced, this factor favors a bench trial because it will allow for a far more expeditious development of the record.

### 4. Administration of Justice

Finally, courts have recognized that when a party waives its right to a jury trial and then asks for a discretionary grant of such a trial, the rights of other litigants awaiting trial should be considered. Because a jury had not been demanded in this case, the Court allotted two weeks for this trial and scheduled a number of other civil jury trials to follow immediately on the heels of this one. These include an automotive product liability action involving an elderly plaintiff, a contentious contract dispute among family members, and a trademark action. *See* Transcript of Hearing, Oct. 5, 1998, at 30–33. If the Court were to grant Khalil's motion, all of these trials would have to be continued for at least one week, and all of those litigants would therefore be delayed in receiving their respective day in court. Alternatively, the trial in this matter would have to be continued six to nine months. In light of Khalil's failing health and plaintiffs' desire to proceed to trial expeditiously, *see* Hearing Tr. at 35–42, that possibility poses its own concerns regarding the disposition of this case. This factor weighs heavily in favor of a bench trial.

### 5. Appearance of Bias or Prejudice

In addition to the above-stated factors, Khalil argues that a jury trial would be preferable to avoid the appearance of bias or prejudice on the part of this Judge, who presided over the criminal case against at

least one likely witness in this case and who has presided over BCCI-related civil litigation—including conducting successfully a series of settlement discussions at the request of First American and Clark M. Clifford and Robert A. Altman in *First American v. Al-Nahyan*, Civ. No. 93–1309.[3] The argument is unavailing for three reasons.

 First, as was stated at the motions hearing, the Court has not prejudged any of the issues; this case will be decided solely on the basis of the evidence adduced at trial. *See* Hearing Tr. 16–18. Were that not the case, the Court would certainly have granted Khalil a jury trial or considered recusing. Second, there being no actual judicial bias or prejudice in this case, there also is no appearance of prejudice. As Judge Rogers recently noted for the court in a case distantly related to this:

> Complex litigation may often require the district court to consider facially conflicting claims against some or all of the parties involved in the initial underlying litigation. As a matter of court management and efficiency, the assignment of related matters to a single judge is preferred. *See* D.D.C.R. 405. Indeed, the courts have developed rules and presumptions that enable the most efficient use of limited judicial resources while at the same time protecting the various parties' rights to have their claims and arguments heard and decided by an impartial decision-maker. Trial judges frequently receive extraneous information about parties appearing before them but are presumed to disregard it..... Similarly, a judge may have personal experience with particular parties who have appeared before her in previous cases, or she may have learned about underlying events by presiding over related trials.... Yet such prior knowledge does not, by itself, generally raise questions about the fairness of a judge..... Judges are presumed to be able to compartmentalize the information they receive and only

rely on evidence relevant for a particular decision.

*Clifford v. United States*, 136 F.3d 144, 148–49 (D.C.Cir.1998) (citations omitted). Indeed, although this Court has presided over criminal and civil litigation arising out the collapse of BCCI, in none of those cases have the facts been determined at trial. In the criminal cases, the Court accepted guilty pleas on the basis of largely uncontested factual proffers, and, as was noted above, four of the five civil cases were entirely resolved short of trial. Lastly, both parties benefit from the procedural safeguard of Rule 52 of the Federal Rules of Civil Procedure, which requires findings of fact supported by the evidence and conclusions of law—further reducing the appearance that the Court could rely for decision on information other than that presented at trial.

### CONCLUSION

For the reasons stated above, this case should be, and will be, tried to the Court. Accordingly, it is hereby

**ORDERED** that Khalil's Motion For Jury Trial is DENIED; and it is

**FURTHER ORDERED** that at the bench trial set to commence at 10:00 a.m. on January 25, 1999 in Courtroom 18, the total trial time shall be (50) hours: each side shall have 25 hours to present its case. The 25 hours (measured by use of a chess clock) given each side includes any opening statement or closing argument that either party chooses to make as well as including the direct examination of the party's own witnesses and the cross examination of the other party's witnesses. In short, each time counsel rises to speak, the time used will be counted against its allotted 25 hours; and it is

**FURTHER ORDERED** that deposition transcripts that are otherwise admissible may be made part of the trial record by submission to the deputy clerk; transcripts need not be read into the record; and it is

---

**3.** Khalil was notified of the request for settlement discussions and was invited by the Court to participate. Khalil did not object to the settlement discussions taking place but chose not to participate. Ultimately, First American voluntarily dis- missed its case against Khalil on the grounds that the allegations in this suit subsume its case and that the ultimate beneficiaries of any judgment against Khalil would be the same.

**FURTHER ORDERED** that **any and all** motions in limine shall be filed **not later than November 6, 1998;** oppositions are due not later than **November 13, 1998;** and replies, if any, shall be filed by **November 18, 1998.** Service of legal memoranda shall be made the same day as filing, either by hand or by facsimile. Where exhibits cannot be served on the same day, they shall be served by overnight express mail (morning delivery); and it is

**FURTHER ORDERED** that **Pretrial Statements** conforming to the requirements of Local Rule 209(b) shall be filed not later than **November 23, 1998.** Pretrial Statements should be prepared on the assumption that all motions in limine will be denied, but the parties should note in their respective statements how the granting of any of the motions in limine may affect a party's trial presentation.

IT IS SO ORDERED.