BCCI HOLDINGS (LUXEMBOURG),
SOCIETE ANONYME, et al.,
Plaintiffs,

v.

Abdul Raouf Hasan KHALIL,
et al., Defendants.

No. CIV.A. 95–1252 JHG.

United States District Court,
District of Columbia.

Jan. 7, 1999.

Michael Nussbaum, Ropes & Gray, Jeffrey David Robinson, Eric Leslie Lewis, Anne Katherine Toomey, Stacy Allison Feuer, Baach, Robinson & Lewis, Washington, DC, for BCCI Holdings (Luxembourg), S.A., Bank of Credit and Commerce International S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company Holdings Limited, International Credit and Investment Company (Overseas) Limited, Credit and Finance Company Limited.

Thomas Jay Barrymore, Silver Spring, MD, James P. Linn, Stephen R. Johnson, Linn & Neville, Oklahoma City, OK, for Abdul Raouf Khalil, Syed Ziauddin Ali Akbar.

### MEMORANDUM OPINION AND ORDER

GREEN, District Judge.

This dispute arose out of the collapse of the Bank of Credit and Commerce International ("BCCI"). The background is briefly chronicled in a prior opinion. *See BCCI Holdings (Luxembourg) S.A. v. Khalil,* 182 F.R.D. 335 (D.D.C.1998). Pending before the Court are motions *in limine* filed by both sides. Both motions concern Syed Ziauddin Ali Akbar ("Akbar"), once a central figure in the BCCI hierarchy and a defendant in default in this action.

After BCCI's assets were frozen in 1991, banking regulators around the world investigated the causes of BCCI's collapse. Extensive losses in the bank's treasury operations were a focal point of investigation. Akbar, who had supervised or was second in charge of BCCI's treasury operations from 1980 to 1986 in London, England was a witness of particular interest. From April to July 1993, Akbar gave an extensive interview to the City of London Police and the Serious Fraud Office (collectively "SFO") in London. On September 27, 1993, Akbar pleaded guilty to sixteen counts of false accounting in the Central Criminal Court in London. After serving his sentence in England, Akbar moved to Pakistan. Plaintiffs deposed Akbar in Islamabad on January 14, 1998. On the eve of the

deposition, Khalil's counsel chose not to travel to Pakistan to attend.

## A. Khalil's Motion In Limine

Abdul Hasan Raouf Khalil ("Khalil")'s motion seeks to preclude any and all of Akbar's statements to the SFO as inadmissible hearsay because the statements were not sworn and Khalil's counsel had no opportunity to cross-examine Akbar on these statements. Plaintiffs appear to concede that these statements initially were hearsay. They counter that the statements to the SFO became admissible when Akbar adopted them in his deposition in this action and in his deposition in a related case in which Khalil also was a defendant. *See First American Corp. v. Al-Nahyan*, 17 F.Supp.2d 10 (D.D.C.) (providing background of that case).

Akbar is not expected to testify voluntarily at the trial in this case and, so long as he remains in Islamabad, he is beyond the subpoena power of this Court. Therefore, his deposition testimony may be admitted, subject to the Federal Rules of Evidence, as though he were present and testifying at the trial. *See* FED. R. CIV. P. 32(a)(3)(B). In his deposition in this case, Akbar stated generally that he recalled giving interviews to a number of law enforcement agencies.[1] With respect to his SFO interview, Akbar stated

> I do not remember the date of these interviews but I gave interviews to S.F.O. U.K. I think that interview was recorded by a tape recorders. My answers to the questions in the interview were correct.

*See* Pls.' Opp. Mem. Ex. B at 1. On a number of points, Akbar could not recall details and referred counsel to his statements given to the SFO. For example.

> Regarding compensation to Mr. Khalil for acting as a Nominee of the C.C.A.H. shares, I do not remember whether the B.C.C.I. has paid any thing to him. I have very clearly mentioned in my interviews

with S.F.O. about these arrangements if any were existing.

*Id.* at 2.

> I have seen Ex. P.9 which ... seem[ ][to] relate to various payments amounting to $135.4 Million for the purchase of C.C.A.H. shares by various share-holders, for their own and as nominee for the B.C.C.I. The sources of those funds were not clear whether they were of B.C.C.I. own funds or from the share-holders own funds, because all the share-holders of the C.C.A.H. were the clients/Depositors of the B.C.C.I. However, I have explained this again in my Inter-views with the S.F.O. and I do not remember now.

*Id.* at 3.

In his deposition in *First American*, in which the Court in Karachi allowed both questions and answers to be recorded, Akbar's memory of his S.F.O. statements was slightly fresher but still incomplete. For example,

> Q. Your have seen excerpts from the transcription of the tap-recorded interview held in the Bishop Gate police station which is Ex. P.26 and comprises of four pages and do you admit its contents?
>
> A. Yes.
>
> . . . .
>
> Q. Were the questions put to you in interview were accurate and honest and whether your answers were also accurate and honest?
>
> A. Yes.
>
> . . . .
>
> Q. The question Ex. P.26/1 at page 22 was put to you?
>
> A. Yes, and I had stated that I had seen the document, but now I do not remember if I had seen that document.

Pls.' Opp'n Mem. Ex. C at 1–2.

Elsewhere in the deposition, counsel for First American asked Akbar to adopt certain documents as transcriptions of his S.F.O

---

1. Akbar's deposition was taken by the Court in Islamabad pursuant to Letters of Request for Assistance under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *See* Fed.R.Civ.P. 28(b) and advisory committee's note (1993 amendment). Under the usual practice of that Court, only the witness's answers and not the questions are recorded. Unless noted, the following excerpts are verbatim repetitions of Akbar's statements as transcribed by the Court in Islamabad, including grammatical and spelling errors.

statements; he would not do so. For example:

> Q. Do you identify document mark-L to be transcription of your tape-recorded inter-view held in Bishop Gate police-station London?
>
> A. I cannot say unless I see the original tape.
>
> Q. Can you: refresh your memory by looking at Mark–L and remember that Mr. Khalil had told you that he had told Mr. Altman and Mr. Clifford that he was the nominee for the BCCI?
>
> A. As I have said earlier, I do not remember.
>
> Q. But if your this statement is included in your tape-recorded interview, will you say it to be the accurate and correct.
>
> A. Yes.

*Id.* at 9.

Under the Federal Rules of Evidence, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). At issue here is whether, and to what extent, a witness during testimony can adopt or incorporate a prior statement such that the prior statement becomes one "made by the declarant while testifying."

Courts look to the Advisory Committee notes as a helpful guide to interpreting the Rules. *See Tome v. United States,* 513 U.S. 150, 160, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (plurality); *id.* at 167, 115 S.Ct. 696 (Scalia, J., concurring in part and concurring in the judgment). When framing its discussion of prior statements that have been excluded from the definition of hearsay 'under Rule 801(d)(1), the Advisory Committee stated:

> If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem. The hearsay problem arises when the witness on the stand de-

nies having made the statement or admits having made it but denies its truth.

FED. R. EVID. 801(d)(1) advisory committee's note (1972 proposed rule). This is in keeping with a number of decisions recognizing adopted or incorporated statements as non-hearsay. *See, e.g., United States v. Livingston,* 661 F.2d 239, 243 n. 14 (D.C.Cir.1981) (implicitly accepting proposition that prior statements incorporated into live testimony are non-hearsay but finding record did not demonstrate effective adoption of such statements); *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 946 F.2d 147, 153 (1st Cir.1991) (collecting cases); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1274 (7th Cir.1984); *United States v. Klein,* 488 F.2d 481, 483 (2d Cir. 1973) (incorporation principle has long history). *But cf. United States v. Check,* 582 F.2d 668, 680 (2d Cir.1978) (prior statement remains prior statement).

■ Less clear is the standard used to measure when a witness has effectively incorporated prior statements into present testimony.[2] The boundaries of what is required for effective incorporation have been marked. On the one hand, where a witness cannot recall making a prior statement, has no present recollection of its contents and is not even sure the events referred to in the prior statement occurred, the witness has not incorporated the prior statement into present testimony. *See Livingston,* 661 F.2d at 243 n. 14; *see also United States v. Micke,* 859 F.2d 473, 476 (7th Cir.1988); *Goings v. United States,* 377 F.2d 753, 761–62 (8th Cir. 1967). *But see United States v. Klein,* 488 F.2d 481, 483 (2d Cir.1973) (suggesting effective incorporation if witness affirmed that her grand jury statement was true but could not recall at trial events covered by her grand jury testimony).

■ On the other hand, a witness's reference to the prior statement need not be so specific as to require each and every question of a prior deposition or every sentence of a prior statement to be reiterated by the witness during testimony. *See Amarin Plas-*

---

**2.** The Advisory Committee and some decisions use the verb "adopt" to describe the means by which a prior statement becomes present testimony, but this Court finds the verb "incorpo-

rate" to be a more precise description. *Accord McIntyre v. Reynolds Metals Co.,* 468 F.2d 1092, 1094 (5th Cir.1972) (using "incorporate" rather than "adopt").

*tics,* 946 F.2d at 153; *Federal Deposit Ins. Corp. v. Gravee,* 966 F.Supp. 622, 635 (N.D.Ill.1997). A more general incorporation is permitted. *See Amarin Plastics,* 946 F.2d at 153 (witness adopted contents of letters); *Gravee,* 966 F.Supp. at 635 (witness adopted answers in prior administrative deposition).[3]

The gray country within these bounds is home to cases such as those where the witness has only a general recollection of a prior statement and avers to its truth or where the witness recalls some but not all the events detailed in a prior statement and can only say that the prior statement "sounds right." Because reliability is the touchstone for most evidentiary questions, in these middle-ground cases it must be established that the prior statement is about as reliable as present testimony for incorporation of a prior statement to be effective. *See* MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE 194–95 (4th ed.1996). To achieve that goal, reference must be made to other rules that guide the relevant reliability analysis; i.e., Rules 602 and 803(5) and the right to cross-examination embodied in the Federal Rules of Civil Procedure and Evidence. *See, e.g.,* FED. R. EVID. 607, 611; *Pillsbury Company v. Conboy,* 459 U.S. 248, 259 n. 18, 103 S.Ct. 608, 615 n. 18. 74 L.Ed.2d 430 (1983).

■ Rule 602 directs that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. This rule applies to incorporated prior statements just as it applies to other parts of live testimony. To satisfy the personal knowledge requirement when incorporating a prior statement into present testimony, a witness must (1) have had personal knowledge of the matter addressed by the prior statement at the time it was made; (2) have current personal knowledge of the substance of the prior statement, *see McIntyre v. Reynolds Metals Co.,* 468 F.2d 1092, 1095 (5th Cir.1972); and (3) have current personal knowledge of the matter addressed by the prior statement. In *Gravee,* for example, counsel elicited testimony showing that the witness had recently reviewed his administrative deposition, had personal knowledge of the matters discussed therein, and was available for cross-examination on his incorporated statements. *Gravee,* 966 F.Supp. at 635.

■ Obviously, the incorporated statement must also be available to opposing counsel to permit cross-examination thereon. *See McIntyre,* 468 F.2d at 1095; *Gravee,* 966 F.Supp. at 635. Although the better practice is to provide opposing counsel with an advance copy of a prior statement likely to be incorporated by a witness on the stand, it is not required in every case.[4] So long as opposing counsel has a reasonable time to absorb the contents of an incorporated statement, at least equivalent to the time available to digest live testimony, the right to cross-examination is not impaired.

■ Where a witness has only secondary personal knowledge of a prior statement, that is, where the witness currently lacks personal knowledge of the matters addressed by a prior statement but knows the statement to be true, the statement cannot be incorporated as part of the witness's present testimony because the witness lacks personal knowledge and is unavailable for cross-exam-

---

3. In a curious caveat, the *Amarin Plastics* court suggested that even after a witness adopts a prior statement, it may be ruled inadmissible unless the Rule 801(d)(1)(B) criteria for prior consistent statements have been met. *See Amarin Plastics,* 946 F.2d at 153 n. 5. That observation appears to confuse the incorporation analysis. As the Advisory Committee notes indicate, when a witness incorporates a prior statement into present testimony, there is no hearsay problem because there no longer is an out-of-court statement at issue. *See* Rule 801(d) advisory committee's notes (1972 proposed rule). The restrictions of Rule 801(d)(1)(B) apply only to out-of-court state-

ments. *See Tome,* 513 U.S. at 157–58, 115 S.Ct. 696.

4. Two additional considerations may require greater pretrial disclosure in criminal cases. First, such disclosure may be required by the Sixth Amendment. Second, in civil cases it is likely that a witness's incorporated statement will be disclosed during discovery. In the absence of wide-open pretrial discovery in criminal cases, fairness considerations may require that pretrial disclosure of statements likely to be adopted be made.

ination as to the prior statement. Therefore the statement is hearsay.[5]

■ Admissibility is not entirely foreclosed, however, because the statement may be admissible under the hearsay exception for recorded recollections. FED. R. EVID. 803(5). Where a witness makes a recorded statement while matters are fresh in her memory and then at trial no longer has personal knowledge of the matters addressed by such statement, the statement may be admitted if the statement accurately reflected the witness's knowledge at the time it was made. See generally MICHAEL H. GRAHAM, 31 FEDERAL PRACTICE AND PROCEDURE § 6756 (2d ed.1997). If admissible, the statement may only be read into the record and may not be itself received into evidence. FED. R. EVID. 803(5).

■ Applying these principles to Akbar's testimony, it is clear that in most instances Akbar testified that he lacked sufficient personal knowledge at the time of his depositions to incorporate his statements to the SFO into his deposition testimony. The one exception may be the four pages that comprised Plaintiff's Exhibit 26 in the First American deposition. See Pls.' Opp'n Mem. Ex. C at 1–2 (Akbar admits its contents). The Court cannot decide the issue without the benefit of reviewing that exhibit. Therefore, Khalil's motion will be granted in part as to plaintiffs' adoption theory for all SFO statements save Exhibit 26 from the First American deposition. If plaintiffs wish to introduce those four pages under the adoption theory they must first make a proffer.[6]

However, Akbar's SFO statements may be admissible as recorded recollections. Two issues, one substantive, the other procedural, would have to be addressed before that issue could be decided. As to substance, a question arises as to whether Akbar's statements in 1993 are sufficiently close in time to events occurring between 1980 and 1986 to fall within the Rule 803(5) exception for recorded recollections. See, e.g., Wolcher v. United States, 200 F.2d 493, 496 (9th Cir.1952) (statement in 1948 addressing events in 1943 not sufficiently contemporaneous). The Advisory Committee specifically left the contemporaneity requirement undefined to allow for case-by-case application of this hearsay exception. See Fed.R.Evid. 803(5) advisory committee's note ("No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate.").

Assuming plaintiffs can show that the SFO statements satisfy the Rule 803(5) criteria, a procedural question arises as to whether the statements had to have been read into the record during Akbar's deposition testimony or whether plaintiffs may do so at trial. Because neither party identified, let alone addressed, the Rule 803(5) issues, the Court will leave them where they lay. If plaintiffs wish to seek admission of the SFO statements by this route, they shall make a proffer before trial. Any time devoted to oral argument on this issue will be deducted from the time allotted for trial.

### B. Plaintiffs' Motion in Limine

■ Of the sixteen counts of false accounting to which Akbar pled guilty, a number of those counts relate to financial transactions involving Khalil. Plaintiffs seek to limit the admissibility of Akbar's guilty plea. At issue is the scope of Rule 803(22) of the Federal Rules of Evidence, which provides, in pertinent part, that the hearsay rule does not exclude:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty . . ., adjudging a person guilty of a crime punishable by death or imprisonment in excess of one

---

5. In some cases, the Rule 801(d)(1) exemption from the hearsay definition for certain prior statements may apply.

6. Khalil also argued that plaintiffs did not provide him with full copies of the SFO transcripts at the time of Akbar's deposition in this case and thereby precluded cross-examination on those statements. That may have served as an alternative basis for rejecting plaintiffs' incorporation theory except that Khalil's counsel did not attend the deposition, waiving the right to cross-examination.

year, to prove any fact essential to sustain the judgment. . . .

FED. R. EVID. 803(22).

The parties appear to agree on a number of points. No challenge has been made to the proposition that foreign convictions fall within the hearsay exception. *See Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1189 (3d Cir.1978). Both parties agree that Akbar's guilty plea can be admitted as evidence of the essential facts, under the English crime of false accounting, that the documents underlying each of the sixteen counts were falsified by Akbar. The guilty plea does not establish that the documents were falsified, but serves only as admissible evidence toward that end. The Advisory Committee—echoing trial judges' favorite phrase when ruling evidence to be admissible—took the position that the prior conviction may be taken in "for what it is worth." *See* FED. R. EVID. 803(22) advisory committee's note (1972); *First Nat'l Bank of Louisville v. Lustig*, 832 F.Supp. 1058, 1064 (E.D.La. 1993).

Understandably, the parties value Akbar's guilty plea differently. Khalil would have the Court treat the plea as an *a fortiori* exoneration of himself. Plaintiffs counter that even if the documents were falsified in some respects, Khalil's innocence is only one of numerous possible inferences that can be drawn from the fact. Plaintiffs treat their argument as one going to admissibility. They argue that Akbar's guilty plea is not admissible to show Khalil's involvement, or lack thereof, in certain transactions because Khalil's role was not an "essential fact" to Akbar's conviction. *Cf. Columbia Plaza Corp. v. Security Nat'l Bank*, 676 F.2d 780, 789–90 (D.C.Cir.1982) (general verdict on conspiracy charge not admissible to prove one out of many possible overt acts).

However, as with Khalil's argument, plaintiffs' argument goes to the weight rather than admissibility of the guilty plea. Unlike in *Columbia Plaza*, here it is undisputed that Akbar's conviction is admissible to show certain "essential facts;" that is, that certain documents were falsified. Khalil may further *argue* that the Court should draw the inference that the falsified nature of the doc-

uments tends to show the absence of liability on Khalil's part. Whether the Court should or will draw such an inference depends, in part, upon the weight given to Akbar's conviction, and arguments concerning that will be entertained at trial after all of the evidence is in.

Plaintiffs also are concerned that Khalil may seek to introduce the prosecutor's factual proffer made during Akbar's plea colloquy. Khalil does not suggest that he plans to do so. Should Khalil seek to introduce any evidence beyond that directly related to Akbar's guilty plea, he must first make a factual proffer. Khalil also indicates he will use Akbar's guilty plea to impeach Akbar's deposition testimony. That, of course, is a non-hearsay purpose and is permissible. *See* FED. R. EVID. 609, 806. Because Akbar's conviction is admissible under Rule 803(22), the Court does not reach Khalil's argument under Rule 804(b)(3). Plaintiffs' motion will be denied without prejudice to renew at trial with respect to the prosecutor's proffer.

### C. Admissibility of Plaintiffs' Expert's Declaration on English Law

■ In support of their argument on what facts are essential to the English charge of false accounting, Plaintiffs submitted a declaration from an English barrister who specializes in criminal law, with emphasis on white collar crime. *See* Pls.' Mem. Ex. 2. Khalil complains that this "evidence" should be excluded because no expert report was provided in compliance with Rule 26(a)(2). The argument gives profile to the curious position of expert testimony on questions of law, which is only permissible in limited circumstances. *See Thomson Consumer Electronics, Inc. v. Innovatron, S.A.*, 3 F.Supp.2d 49, 52 (D.D.C.1998). Is such testimony "evidence" or is it argument? Whatever the answer may be, for questions of foreign law, Rule 44.1 of the Federal Rules of Civil Procedure, which permits expert testimony on such questions, controls. Plaintiffs have complied with that rule. To the extent that Khalil has moved to strike plaintiffs' Exhibit 2, that motion is denied.

\* \* \* \* \* \*

Accordingly, it is hereby

**10**

ORDERED that Khalil's Motion in Limine is GRANTED in part and DENIED in part as set forth above; it is

FURTHER ORDERED that Plaintiffs' Motion in Limine is DENIED without prejudice to renew at trial as set forth above; it is

FURTHER ORDERED that the Declaration of Clare Montgomery, QC, attached as Exhibit 2 to Plaintiffs' Motion in Limine remains in the record.

IT IS SO ORDERED.